968 A.2d 187 (2009)
406 N.J. Super. 445
John A. BART, Esq., Complainant-Appellant,
v.
PASSAIC COUNTY PUBLIC HOUSING AGENCY, Respondent-Respondent.
A-5049-07T3
Superior Court of New Jersey, Appellate Division.
Submitted March 17, 2009.
Decided April 9, 2009.
*189 John A. Bart, appellant pro se.
William J. Pascrell, III, Passaic County Counsel, for respondent Passaic County Public Housing Agency (Mr. Pascrell, of counsel; Matthew Malfa, Deputy County Counsel, on the brief).
Anne Milgram, Attorney General, for respondent Government Records Council (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).
Before Judges WEFING, YANNOTTI and LeWINN.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
John A. Bart (Bart) appeals from a final determination of the New Jersey Government Records Council (GRC), which found that Bart had not been unlawfully denied access to government records in violation of the Open Public Records Act (OPRA or the Act), N.J.S.A. 47:1A-1 to -13, and that the custodian of records did not knowingly and willfully violate OPRA in responding to the request. We affirm.
This appeal arises from the following facts. On August 6, 2007, Bart submitted to the Passaic County Public Housing Agency (Agency) a request for government records, which sought the following:
[1] [t]he Passaic County [Public] Housing Agency sign(s) currently posted in conformance with N.J.S.A. 47:1A-5(j); [and]
[2] [a]ll Passaic County [Public] Housing Agency signs that have been posted in conformance with N.J.S.A. 47:1A-5(j) since July 7, 2002.
The secretary for the Agency's custodian of records responded in a letter dated August 15, 2007. The letter included copies of a "Fair Housing BookletIt's Your Right"; a two-page document, in English and Spanish, regarding applications for housing assistance under programs administered by the United States Department of Housing and Urban Development (HUD); a notice in Spanish regarding unlawful discrimination; and a poster about fraud and waste in HUD-funded programs or operations.
On August 20, 2007, Bart wrote to the Agency and stated that its reply was not responsive to his request. Bart stated that "none of the signs relate to N.J.S.A. 47:1A-5(j)." He asked the Agency to "[p]lease respond to [his] request." Apparently, the Agency did not respond to Bart's August 20, 2007 letter.
On September 21, 2007, Bart filed a denial of access complaint with the GRC. In his complaint, Bart indicated that his request for records had been "denied" on August 15, 2007. The GRC forwarded Bart's complaint to the Agency, which filed a response dated November 9, 2007. On November 14, 2007, the Public Information Officer for the County of Passaic sent Bart a letter, along with copies of certain signs posted by the Agency in conformance with N.J.S.A. 47:1A-5(j).
*190 In May 2008, the Executive Director of the GRC issued her findings and recommendations regarding Bart's denial of access complaint. The Executive Director found that Bart's request for records was deficient because he failed to identify with specificity the documents he was seeking. The Executive Director found that the request lacked specificity because it required the custodian to engage in research to determine precisely what records had been requested.
The Executive Director further found that the custodian's initial response to Bart's request was not responsive, but the custodian did not unlawfully deny Bart access to government records because his request failed to specifically identify the records he was seeking and therefore was not valid. The Executive Director also determined that the custodian's delay in responding to the request did not rise to the level of a knowing and willful violation of OPRA or an unreasonable denial of access, under the totality of the circumstances.
At its meeting of May 28, 2008, the GRC adopted the Executive Director's findings and recommended disposition of the complaint. This appeal followed. Bart argues that: 1) the Agency's custodian of records violated OPRA by denying him access to government records that he says were identified with the requisite specificity; and 2) the Agency's custodian of records knowingly and willfully violated OPRA by unreasonably denying him access to the records.
"In light of the executive function of administrative agencies, judicial capacity to review administrative actions is severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994) (citing Gloucester County Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390, 461 A.2d 575 (1983)). Our review of a final decision of an administrative agency therefore is limited to four inquiries:
(1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[Ibid.]
We have reviewed the record in light of this standard and conclude that the GRC's decision must be affirmed.
OPRA declares that it is the public policy of New Jersey that, subject to certain exceptions, "government records shall be readily accessible for inspection, copying, or examination by [its] citizens[.]" N.J.S.A. 47:1A-1. The phrase "government record" is defined in the Act as:
any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, ...
[N.J.S.A. 47:1A-1.1.]
The Act generally provides that, unless a shorter time is otherwise prescribed, "a custodian of a government record shall grant access to a government record or deny a request for access to a government record as soon as possible, but not later *191 than seven business days after receiving [a] request [therefor]." N.J.S.A. 47:1A-5(i).
Under OPRA, a person who is denied access to a government record may either institute a proceeding in the Superior Court or file a complaint with the GRC. N.J.S.A. 47:1A-6. The Act further states that:
[a] custodian shall post prominently in public view in the part or parts of the office or offices of the custodian that are open to or frequented by the public a statement that sets forth in clear, concise and specific terms the right to appeal a denial of, or failure to provide, access to a governmental record by any person for inspection, examination, or copying or for purchase of copies thereof and the procedure by which an appeal may be filed.
[N.J.S.A. 47:1A-5(j).]
OPRA thus provides a means for citizens to gain access to government records that are "not otherwise exempted from its reach." MAG Entm't, L.L.C. v. Div. of Alcoholic Beverage Control, 375 N.J.Super. 534, 546, 868 A.2d 1067 (App. Div.2005). The Act does not, however, require custodians of government records to undertake research for a requestor. Id. at 546-47, 868 A.2d 1067.
The requestor must identify the records sought with specificity. Id. at 549, 868 A.2d 1067. The request may not be a broad, generic description of documents that requires the custodian to search the agency's files and "analyze, compile and collate" the requested information. Id. at 549, 868 A.2d 1067. See also Bent v. Stafford Twp. Police Dept., 381 N.J.Super. 30, 37-39, 884 A.2d 240 (App.Div.2005) (noting that OPRA allows requests for specific records, not requests for general information, data or statistics).
Indeed, as we pointed out in New Jersey Builders Association v. New Jersey Council on Affordable Housing, 390 N.J.Super. 166, 178, 915 A.2d 23 (App. Div.), certif. denied, 190 N.J. 394, 921 A.2d 448 (2007), the short timeframe within which custodians of public records must respond to document requests "does not afford the custodian time to speculate about what the requestor seeks, research, [or] survey agency employees" regarding the request. Consequently, "the requestor's obligation [is] `to specifically describe the document sought[.]'" Ibid. (quoting Gannett N.J. Partners, L.P. v. County of Middlesex, 379 N.J.Super. 205, 212, 877 A.2d 330 (App.Div.2005)).
Bart argues that there was nothing particularly complex about his request for documents. He says that the custodian of records under OPRA should be familiar with the Act, particularly N.J.S.A. 47:1A-5(j), which requires the posting of signs advising members of the public of their right to appeal the "denial of, or failure to provide, access to a government record[.]" He therefore argues that his request for signs posted by the agency "in conformance with N.J.S.A. 47:1A-5(j)" was sufficiently specific. We disagree.
Bart's request for documents required the Agency's custodian of records to undertake some legal research and analysis in order to identify the signs to which Bart was referring in his request. The Act does not, however, require that custodians of government records engage in legal research or consult an attorney in order to identify the records being requested. Bart was required to identify the records he requested with specificity. In our judgment, the GRC correctly found that he failed to do so.
We also reject Bart's contention that the custodian's actions in responding *192 to Bart's request warranted the imposition of penalties pursuant to the Act. N.J.S.A. 47:1A-11a provides that such penalties may be imposed when "[a] public official, officer, employee or custodian" is found to have "knowingly and willfully" violated the Act and "unreasonably denied access under the totality of the circumstances."
Because Bart's request lacked the required specificity, the record fully supports the GRC's finding that the custodian did not unreasonably deny Bart access to the documents under the totality of the circumstances. The record also provides clear support for the GRC's finding that the custodian did not "knowingly and willfully" violate the Act.
Affirmed.