NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0125-14T4

JOHN PAFF,

    Plaintiff-Respondent,

v.

GALLOWAY TOWNSHIP and THALIA C.
KAY, in her capacity as Municipal
Clerk and Records Custodian of
Galloway Township,

    Defendants-Appellants.

_____

| **APPROVED FOR PUBLICATION** |
| :---: |
| **April 18, 2016** |
| **APPELLATE DIVISION** |

Argued March 8, 2016 – Decided April 18, 2016

Before Judges Reisner, Hoffman and Leone.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-5428-13.

Michael J. Fitzgerald argued the cause for appellants (Fitzgerald McGroarty, attorneys; Mr. Fitzgerald, on the briefs).

Walter M. Luers argued the cause for respondent (Walter M. Luers, LLC and Furst & Lurie, attorneys; Mr. Luers, Joshua M. Lurie, and Raymond M. Baldino, of counsel and on the joint brief).

Vito A. Gagliardi, Jr., argued the cause for amicus curiae New Jersey State Association of Chiefs of Police (Porzio, Bromberg & Newman, P.C., attorneys; Mr. Gagliardi, of counsel and on the brief; Phillip C. Bauknight, on the brief).

Christopher J. Michie argued the cause for amicus curiae American Civil Liberties Union of New Jersey and the Electronic Frontier Foundation (Clark Michie, LLP, attorneys; Mr. Michie, Edward L. Barocas, and Jeanne LoCicero, on the joint brief).

Carl R. Woodward, III, argued the cause for amicus curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Mr. Woodward, on the brief).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

Defendants Galloway Township (the Township) and Thalia C. Kay (the Clerk) appeal from a June 10, 2014 Law Division order requiring them to provide plaintiff John Paff with logs of emails, pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. Because OPRA does not require public agencies to create records that do not already exist, we conclude that plaintiff was not entitled to the logs requested in this case. Accordingly, we reverse.

I.

We begin by summarizing the salient facts. On June 8, 2013, plaintiff submitted an OPRA request to the Clerk, seeking "logs" of all emails sent by the Clerk and the Township's Chief

of Police between June 3 and June 17, 2013.[1]  Importantly, plaintiff did not request any specific emails; rather, he sought an itemized list showing the sender, recipient, date, and subject of all emails sent by the Clerk and Chief of Police during the designated period of time.  Based on her own personal understanding of OPRA, legal advice provided by the Township's attorney, and information provided to her by the Government Records Council (GRC),[2] on July 8, 2013, the Clerk sent an email to plaintiff denying his request.

On August 19, 2013, plaintiff filed a verified complaint and order to show cause, seeking to compel defendants to create and provide the requested lists of emails, pursuant to OPRA and the common law right of access to public records.  After the court entered the order to show cause, the parties engaged in

---

[1] In a certification submitted to the court, Captain Christopher Doyle, the Galloway Police Department's Deputy Records Custodian, stated his belief that plaintiff chose these specific dates because of an internal investigation conducted during this period of time.  However, plaintiff testified that he could not recall any reason for making the request, nor the reason for choosing these specific dates.  Plaintiff has filed numerous OPRA requests across New Jersey.

[2] The GRC is an agency "within the Department of Community Affairs . . . charged with adjudicating OPRA disputes" in the event the person seeking the record chooses not to file an action in Superior Court.  Bent v. Twp. of Stafford Police Dep't., 381 N.J. Super. 30, 38 (App. Div. 2005) (citing N.J.S.A. 47:1A-6).

limited discovery and the court heard testimony over the course of three days.

In a certification dated October 16, 2013, the Clerk provided context for denying plaintiff's OPRA request, as well as background information regarding the Township's policies and practices for disclosing public records. During the timespan between "late 2011" and the "end of 2012," the Township had an informal policy of creating email logs in response to specific OPRA requests (the informal log-creation policy). These email logs were "never made, maintained or kept on file" absent a specific request for them, and were produced irrespective of whether OPRA required their production. Notably, the Township never created any logs regarding emails sent by Police Department personnel.

At the end of 2012, due to the "volume of legitimate OPRA requests and the significant Township resources required to appropriately respond to these requests," the Township discontinued the informal log-creation policy, and the Clerk began the practice of only responding to records requests which meet the specific requirements of the OPRA statute.[3] Before discontinuing the informal log-creation policy, the Clerk sought

---

[3] The current Clerk was not the Township's Clerk when the Township first implemented the informal log-creation policy, but was the Clerk when the Township discontinued the policy.

verification from the GRC that doing so would not run contrary to OPRA. In response to the Clerk's inquiry, the GRC advised, "Both the GRC and the Courts have held that a [records] custodian is not required to create new records in response to an OPRA request. If a record does not already exist, the custodian may deny access on the basis that no records responsive exist."

To further confirm this information, on March 7, 2013, the Clerk filed her own OPRA request with the GRC, requesting a log of all emails sent to or from the Acting Executive Director of the GRC "from January 1, 2013 through February 28, 2013." The GRC denied the Clerk's OPRA request on the basis that "no records responsive exist."

According to the Clerk, the Township "do[es] not have the resources to create records which are not required [by OPRA,] and [it] would be entirely inappropriate to place an additional cost and tax burden upon the residents of the Township to do so." Regarding the volume of OPRA requests received by the Township, the Clerk certified that the Township's OPRA responses over the last two years totaled approximately 43,500 pages of paper.

Eric McCarthy, a computer technician employed by the Township, testified that creating an email log, such as those requested by plaintiff, requires a search on the Township's

email "appliance." This search — in which a user enters data into certain electronic search boxes and forwards the results to the desired recipient — takes approximately two to three minutes, but could take longer depending on the volume of search results.

Captain Doyle's certification also addressed the Police Department's ability to create email logs such as those requested by plaintiff. Although the Department had the technical ability to create such logs, Captain Doyle expressed concern that log-creation of this type "would have a significant potential detriment to the Department's ability to protect confidential information, ongoing investigations and investigatory techniques." Furthermore, "[w]hile the Department would have the ability to redact" sensitive information, Captain Doyle certified that "there nevertheless is a real potential danger of inadvertently releasing damaging information."

On June 10, 2014, the judge ruled in plaintiff's favor and entered an order requiring defendants to provide the requested list of emails. The judge concluded that what he called the "metadata" or list of "sender/receiver/date/time of emails," sent by the Clerk and the Chief of Police between June 3 and 17, 2013, was a public record, analogous to a library's card catalogue, and that the preparation of the list required little

effort. He set forth his reasoning in a five-page memorandum of decision, explaining, in pertinent part:

> Whether termed "metadata" (which [p]laintiff's counsel urges and [d]efendant rejects) or not, the fact remains that the emails of the Township Clerk and Chief of Police are public records as defined by the OPRA because they comprise "[] information stored or maintained electronically . . . that has been made, maintained and kept on file in the course of his or its official business by any officer, commission, agency or authority of the state or any political subdivision thereof." By logical/reasonable extension, a log or list of emails that can be easily prepared, is likewise within the [ambit] of that definition.

The judge also rejected Captain Doyle's assertion that production of an email log would compromise the confidentiality of Police Department information, concluding: "Despite the Township's purported concerns about disruption of police investigations, the request made by the [p]laintiff affords him access to no more than the sender/receiver/date/time of emails between the dates of June 3 thru 17, 2013." The judge therefore concluded that plaintiff "is entitled to receipt of the log[s] of emails he has requested, at a reasonable fee commensurate with the effort involved." The judge granted a stay pending appeal. Thereafter, the judge clarified that he would conduct

an in camera review of the requested email list prior to its release to plaintiff.[4]

Defendants filed their notice of appeal on September 5, 2014.[5] Defendants argue, "[I]f a document must be created, it is not a record for purposes of OPRA or the common law right of access." Amici supporting defendants' position emphasize that, if upheld, the trial court's decision would have a significant negative impact on governmental agencies, state-wide. Plaintiff counters that we should not only affirm the trial court's decision, but also "affirm that OPRA's broad mandate favoring transparency and public access to knowledge about government extends to computer information available through a simple computer search requiring, at most, a few minutes."

II.

We review a trial judge's legal conclusions concerning access to public records under OPRA de novo. Drinker Biddle &

---

[4] The judge also awarded plaintiff $15,300 in attorney's fees and $723.13 in costs, pursuant to N.J.S.A. 47:1A-6, but stayed that order as well. Defendants have not appealed the order awarding fees and costs.

[5] After defendants filed their notice, we permitted several amici curiae to intervene. Amici for defendants include the New Jersey State League of Municipalities (LM), the New Jersey Institute of Local Government Attorneys (ILGA), and the New Jersey State Association of Chiefs of Police (ACP). Amici for plaintiff include the American Civil Liberties Union of New Jersey (ACLU) and the Electronic Frontier Foundation.

Reath LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011). We will not disturb factual findings as long as they are supported by adequate, substantial and credible evidence. See Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988).

New Jersey has traditionally maintained a strong public policy that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State[.]" N.J.S.A. 47:1A-1. The OPRA statute ensures, with exceptions, that "all government records shall be subject to public access." N.J.S.A. 47:1A-1. A person who is denied access to a government record may challenge the denial in Superior Court or file a complaint with the GRC. N.J.S.A. 47:1A-6. In OPRA cases, the records custodian has the burden to show that its denial of access was authorized by law. N.J.S.A. 47:1A-6; Asbury Park Press v. Monmouth Cty., 406 N.J. Super. 1, 7 (App. Div. 2009), aff'd, 201 N.J. 5 (2010).

The threshold question in an OPRA claim is whether the plaintiff has requested "government records" pursuant to the statute. O'Shea v. Twp. of West Milford, 410 N.J. Super. 371, 380 (App. Div. 2009) (citation omitted). The statute broadly defines a "government record" as:

> any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, <u>information stored or maintained electronically</u>[6] or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof . . . .
>
> [<u>N.J.S.A.</u> 47:1A-1.1 (emphasis added).]

Notwithstanding its broad definition of government record, "OPRA does not require public agencies to create records." <u>Sussex Commons Assocs., LLC v. Rutgers</u>, 210 <u>N.J.</u> 531, 544 (2012) (citation omitted). We have previously interpreted this aspect of OPRA narrowly, concluding that "a records custodian is not required 'to conduct research among its records . . . and correlate data from various government records in the custodian's possession.'" <u>Bent</u>, <u>supra</u>, 381 <u>N.J. Super.</u> at 37 (quoting <u>MAG Entm't, LLC v. Div. of Alcoholic Beverage Control</u>, 375 <u>N.J. Super.</u> 534, 546-47 (App. Div. 2005)). Thus, based on the plain language of the statute, we have held that "OPRA only allows requests for records, not requests for information." <u>Ibid.</u> (citing <u>MAG</u>, <u>supra</u>, 375 <u>N.J. Super.</u> at 546-47). The GRC

---

[6] The judge quoted this language in support of his decision, stating that "the emails . . . [constitute] 'information stored or maintained electronically . . . that has been made, maintained and kept on file in the course of his or its official business by any officer . . . .'"

has ruled that such requests need not be granted, and we "accord substantial deference to the [GRC's] interpretation." Ciesla v. N.J. Dep't of Health & Senior Servs., 429 N.J. Super. 127, 148 (App. Div. 2012).

N.J.S.A. 47:1A-5(d) requires a custodian to provide a copy of a government record "in the medium requested" if it is kept that way, or "convert the record to the medium requested or provide a copy in some other meaningful medium." However, that section does not change the definition of a "government record" in N.J.S.A. 47:1A-1.1. At appellate oral argument, plaintiff contended that the Township has to compile these email logs even if the Township never would have created such a log for its own use.

Defendants argue that the Township cannot be required to create a document, such as a list of emails, even if it previously created such lists voluntarily in response to OPRA requests, and even if it would only take a few minutes to compile the list. They admit that plaintiff could request copies of the actual emails, but argue that they are not required to create a list of the emails.

Defendants also contend that the list would involve disclosing email addresses of the senders, which might in turn compromise the privacy interests of those who communicated with the Township government in the expectation that their

communications would remain private.  They also express concern about compromising police investigations.

Plaintiff argues that the information he requested was part of the "data" of the individual emails which the agencies kept on file.  Plaintiff also makes the argument that there is no difference between "information" and "records" where electronic records are concerned, contending that computer searches do not create records, but actually "retrieve records that are kept as data."

Plaintiff contends that the logs he requested constitute "metadata," and therefore should be subject to disclosure under OPRA.  Plaintiff cites cases from other jurisdictions which have held that the metadata included in the computerized form of a public record is discoverable as part of a request for the discoverable public record itself.[7]  Defendants counter by arguing that a log of emails is not itself metadata.  Rather, defendants claim that an email log is an independent compilation of metadata that did not exist independently from the emails

---

[7] See, e.g., O'Neill v. City of Shoreline, 240 P.3d 1149, 1153–54 (Wash. 2010); Lake v. City of Phoenix, 218 P.3d 1004, 1008 (Ariz. 2009); In re Irwin v. Onondaga Cty. Res. Recovery Agency, 72 A.D.3d 314 (N.Y. App. Div. 2010); Tennessean v. Elec. Power Bd. of Nashville, 979 S.W.2d 297, 302–04 (Tenn. 1998); Hamer v. Lentz, 547 N.E.2d 191, 195 (Ill. 1989); Seigle v. Barry, 422 So.2d 63, 66 (Fla. Dist. Ct. App. 1982), review denied, 431 So.2d 988 (Fla. 1983).

themselves prior to the OPRA request. In other words, although the information that would be contained in the log plaintiff seeks — the sender, recipient, date, and subject of emails sent by government personnel — is itself metadata,[8] defendants assert that they are not required to assemble a new list that extracts this metadata and displays it in a newly-created document. Stated differently, defendants argue that a log of emails is not a government record because it does not exist prior to the Clerk's receipt of an OPRA request, and that OPRA does not require the creation of a new government record that does not yet exist at the time of a request. We agree.

We hold that OPRA does not require the creation of a new government record that does not exist at the time of a request, even if the information sought to be included in the new government record is stored or maintained electronically in other government records. The Township's computers store the emails, which are government records, but the Township has never created an email database for the use of Township personnel. Unlike a library's card catalogue, the email logs requested here never existed prior to plaintiff's OPRA request. While a computer may be able to create an email log quickly, it is still

---

[8] In his testimony, McCarthy defined metadata as "the information about each particular e-mail" including the sender, date, and recipient of emails.

creating a new government record, which is not required under OPRA as interpreted in <u>Sussex</u>, <u>Bent</u>, and <u>MAG</u>.

We acknowledge that the creation of an email log in the circumstances before us would not present a particularly burdensome task for the Clerk. However, once the email log is generated, redacting it to remove information that is not discoverable under OPRA could require substantial effort, including gathering and reviewing the emails themselves. In any event, an order requiring the creation of an email log, that does not exist prior to time of the request, represents an extension of a plainly-worded statute. "[O]ur goal is to interpret the statute consistent with the intent of the Legislature." <u>Oberhand v. Dir., Div. of Taxation</u>, 193 <u>N.J.</u> 558, 568 (2008). Applying well-settled rules of statutory construction, "we give a statute's 'words and phrases' their usual and ordinary meaning, <u>N.J.S.A.</u> 1:1-1, because the words of a statute ordinarily provide the most reliable indication of legislative intent." <u>Cty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J.</u>, 412 <u>N.J. Super.</u> 126, 132 (App. Div. 2010). When the language in a statute "is clear and unambiguous, and susceptible to only one interpretation," we presume the Legislature meant what it said and that the plain meaning governs. <u>Burnett v. Cty. of Bergen</u>, 198 <u>N.J.</u> 408, 421

(quoting Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004)).

Based on the statute's clear and unambiguous language, and consistent with our previous interpretations of the statute in Bent and MAG, we reverse the order granting plaintiff's OPRA request in this case, as it would require defendants to create a new record which did not otherwise exist. While the OPRA request under review might not present a burdensome task, we can easily envision requests of a similar nature that would present a serious burden. In light of our interpretation of the clearly-worded statute, and the far-reaching implications of requiring governmental entities to produce lists and compilations that do not otherwise exist, we conclude that any extension of OPRA should properly come from the Legislature. Until such an amendment occurs, our holding — that OPRA does not require the creation of a new government record that does not yet exist at the time of a request, even if the information sought to be included in the new government record is stored or maintained electronically in other government records — should provide a clear demarcation line in this case, as well as future cases.

Reversed.[9]

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] In the event we reversed the trial court's OPRA ruling, plaintiff urged us to remand for the court to address his request under the common law right of access. While the common law right of access reaches a broader class of documents than its statutory counterpart, Higg-A-Rella, Inc. v. Cty. of Essex, 141 N.J. 35, 46 (1995), in order to prevail, a litigant must establish an interest in the public record, and that the interest in disclosure outweighs the need for confidentiality. Shuttleworth v. City of Camden, 258 N.J. Super. 573, 582 (App. Div.) (quoting Home News Publ'g Co. v. State, 224 N.J. Super. 7, 16 (App. Div. 1988)), certif. denied, 133 N.J. 429 (1992). In light of plaintiff's testimony that he could not recall any reason for making his request nor the reason for choosing the specific dates in his request, we conclude there exists no basis for a remand.