925 A.2d 63 (2007)
394 N.J. Super. 15
In the Matter of CAMDEN COUNTY PROSECUTOR, Respondent-Respondent, and
Camden County Assistant Prosecutors' Association, Petitioner-Appellant.
In the Matter of Union County Prosecutor, Respondent-Respondent, and
Union County Assistant Prosecutors' Association, Petitioner-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued/Submitted May 21, 2007.
Decided June 18, 2007.
*64 Michael A. Bukosky argued the cause for appellant in A-6631-05T1 (Loccke, Correia, Schlager, Limsky & Bukosky, Hackensack, attorneys; Mr. Bukosky, of counsel and on the brief; Marcia J. Tapia, on the brief).
Howard S. Wilson, Assistant Camden County Counsel, argued the cause for respondent Camden County Prosecutor (Deborah Silverman Katz, County Counsel, attorney; Mr. Wilson, on the brief).
Ira W. Mintz, Deputy General Counsel, argued the cause for respondent Public Employment Relations Commission in A-6631-05T5 (Robert E. Anderson, General Counsel, attorney; Mr. Anderson, on the brief in A-6631-05T5 and A-0593-06T5).
Picillo Caruso O'Toole, Fairfield, attorneys for appellant in A-0593-06T5 (Juan C. Fernandez, of counsel; Dawn M. Sullivan, on the brief).
Schenck, Price, Smith & King, Morristown, attorneys for respondent Union County Prosecutor (Kathryn V. Hatfield, of counsel and on the brief).
Before Judges LINTNER, S.L. REISNER and SELTZER.
The opinion of the court was delivered by
LINTNER, P.J.A.D.
These two appeals filed by the Union County and Camden County Prosecutors' Associations (Associations) are calendared back-to-back and consolidated for the purposes of this opinion. The Associations are the collective bargaining representatives for all assistant prosecutors working for the respective County Prosecutors (Prosecutors).[1] Each Association's latest contract expired on December 31, 2005. After negotiations with the Prosecutors failed to reach an agreement, the Associations filed petitions with the Public Employment Relations Commission (PERC), seeking compulsory interest arbitration pursuant to the Police and Fire Public Interest Arbitration Reform Act, N.J.S.A. 34:13A-14a to -16.6 (the Act).[2] The Prosecutors' responses sought dismissal of their respective Association's petitions *65 on the grounds that the Associations' members are not police officers nor are they engaged in performing police services and, thus, are not entitled to invoke compulsory interest arbitration under the Act.
On August 10, 2006, based on the parties' briefs and documentation, PERC issued two written decisions incorporating orders granting the Prosecutors' dismissal motions. The Associations filed timely notices of appeal. The central issue in this appeal is whether assistant prosecutors fall within the Act's categorical definition of "employees engaged in performing police services," N.J.S.A. 34:13A-15, thus entitling them to compulsory interest arbitration. We hold that they do not and, consequently, affirm PERC's orders.
In 1995, the Legislature updated its 1977 law on interest arbitration by passing the Act. N.J.S.A. 34:13A-16a(1) provides the framework for labor negotiations between "public fire or police department[s] and an exclusive representative concerning the terms and conditions of employment." The Act provides avenues for resolution of negotiation impasse through mediation, N.J.S.A. 34:13A-16a(2), or, upon request by either party, through independent fact-finding and suggested settlement terms by PERC. N.J.S.A. 34:13A-16b(1). Alternatively, as the Associations did in this case, "either party may petition [PERC] for arbitration on or after the date on which their collective negotiation agreement expires." N.J.S.A. 34:13A-16b(2). Arbitration undertaken pursuant to N.J.S.A. 34:13A-16b(2) is referred to as "compulsory interest arbitration." Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. 71, 80, 644 A.2d 564 (1994). It is a statutorily mandated procedure for resolving the terms of a new contract. N.J. State Policemen's Benevolent Ass'n, Local 29 (Irvington P.B.A.) v. Town of Irvington, 80 N.J. 271, 284-88, 403 A.2d 473 (1979); see also Policeman's Benevolent Ass'n, Local 292 v. Borough of N. Haledon, 158 N.J. 392, 400, 730 A.2d 320 (1999).
The Legislature declared its reasons for enacting compulsory interest arbitration for firefighters and law enforcement officers in N.J.S.A. 34:13A-14a:
Recognizing the unique and essential duties which law enforcement officers and firefighters perform for the benefit and protection of the people of this State, cognizant of the life threatening dangers these public servants regularly confront in the daily pursuit of their public mission, and fully conscious of the fact that these public employees, by legal and moral precept, do not enjoy the right to strike, it is the public policy of this State that it is requisite to the high morale of such employees, the efficient operation of such departments, and to the general well-being and benefit of the citizens of this State to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes. (emphasis added).
Defining the two groups for which the Act was intended, namely, public police and fire departments, N.J.S.A. 34:13A-15 provides the following definition for "public police department":
[A]ny police department or organization of a municipality, county or park, or the State, or any agency thereof having employees engaged in performing police services including but not necessarily limited to units composed of State troopers, police officers, detectives and investigators of counties, county parks and park commissions, grades of sheriff's officers and investigators; State motor vehicle officers, inspectors and investigators of the Alcoholic Beverage Commission, conservation officers in Fish, Game and Shell Fisheries, rangers in parks, marine patrolmen; correction *66 officers, keepers, cottage officers, interstate escort officers, juvenile officers in the Department of Corrections and patrolmen of the Human Services and Corrections Departments; patrolmen of Capitol police and patrolmen of the Palisades Interstate Park Commission. (emphasis added).
In reaching its decision that assistant prosecutors did not qualify as employees engaged in performing police services, PERC deemed it significant, "[a]lthough . . . not determinative" that N.J.S.A. 34:13A-15 did not expressly include assistant prosecutors. It noted that county prosecutors have the statutory power to hire assistant prosecutors, N.J.S.A. 2A:158-15, and that they also hire county investigators and detectives, job titles that the Legislature did specify in N.J.S.A. 34:13A-15. Citing an Assembly Committee Statement accompanying the 1977 Act, PERC observed that the Legislature's "aim" was "to delineate the `principal titles' within the scope of the interest arbitration statute." See Assembly Labor, Industry and Professions Committee, Statement to Senate No. 482 (December 6, 1976). PERC reasoned that had the Legislature intended to cover assistant prosecutors as well, it likely would have listed them in the statute.
Second, PERC was influenced by the fact that assistant prosecutors do not have the kinds of police powers that have been granted by law to some other classes of employees in other public-employment contexts. Citing the holding in County of Gloucester v. Public Employment Relations Commission, 107 N.J.Super. 150, 158, 257 A.2d 712 (App.Div.1969), aff'd, 55 N.J. 333, 262 A.2d 1 (1970), that corrections officers were police officers by virtue of N.J.S.A. 2A:154-4, which empowers them "to detect, apprehend and arrest," PERC pointed out that assistant prosecutors lack similar statutory authority.
PERC rejected the Associations' claims that the missing statutory source of power could be found in N.J.S.A. 2A:158-18. Instead, it interpreted the statute as applying only in a grand jury context, concluding: "It permits assistant prosecutors to attend grand jury sessions to perform the duties of the prosecutor. It does not, however, grant them any statutory police powers."
Further illustrating its point, PERC contrasted the Legislature's treatment of assistant prosecutors with its treatment of county detectives and investigators. While county detectives and investigators are expressly granted police powers and duties under N.J.S.A. 2A:157-2 (detectives) and N.J.S.A. 2A:157-10 (investigators), the statute creating the position of assistant prosecutor, N.J.S.A. 2A:158-15, is silent as to the duties of the position. PERC determined that "[t]his statutory framework indicates that, while the Legislature viewed a prosecutor's investigators and detectives as police employees in the traditional sense, it did not view assistant prosecutors in the same manner."
Conceding that some assistant prosecutors might be called upon to perform "more traditional police activities," such as "make arrests, carry firearms or conduct searches," PERC reasoned that the performance of those occasional tasks was not sufficient to characterize the whole bargaining unit as performing police services. Concluding that a more accurate characterization of assistant prosecutors was that they were lawyers, not police, PERC found:
[A]ssistant prosecutors primarily perform legal services, rather than police services, in connection with the prosecution of criminal cases. Assistant prosecutors also have responsibilities in connection *67 with criminal investigations and work with police and investigators, but their involvement in these pre-trial matters mainly involves the exercise of legal skills and judgment, not police skills or training.
PERC derived analogous support from In re Eligibility of Certain Assistant Union County Prosecutors to Transfer to PFRS Under N.J.S.A. 43:16A-1 et seq. (In re Assistant Union County Prosecutors), 301 N.J.Super. 551, 562, 694 A.2d 289 (App.Div.1997), in which the panel held that assistant prosecutors are not police officers for the purposes of eligibility to join the Police and Firemen's Retirement System.
On appeal, the Associations assert that PERC (1) misinterpreted N.J.S.A. 2A:158-18 in concluding that it applied to performance of duties before the grand jury and (2) erred in determining that assistant prosecutors did not possess the statutory power to arrest. They also contend that the current rules and regulations of each Prosecutor's Office specifically establish that assistant prosecutors are engaged in performing police services. The Camden County Association also asserts that the withholding of compulsory interest arbitration is contrary to the legislative intent to afford law enforcement officers who cannot strike the ability to enforce their right to collective bargaining. The Union County Association asserts that by relying on its analysis in the Camden County Association decision PERC failed to examine the specific duties and responsibilities of the assistant prosecutors in Union County. It also maintains that PERC rendered its decision without oral argument or the submission of additional evidence.
In support of its position that assistant prosecutors engage in police services, the Union County Association points out, as it did before PERC, that at least one assistant prosecutor is assigned to each of the following units: Special Prosecutions; Child Abuse; Asset Forfeiture; Homicide; and Narcotic Strike Force. As such, it argues that its members are involved in investigations of matters for which those units are responsible. It maintains that the Manual of Administrative Policies and Procedures Governing the Union County Prosecutor's Office requires its members "`to courteously and objectively enforce the law'"; its members who are assigned to the investigation division and legal division carry police identification cards; and the "Assistant Prosecutors who drive County vehicles while off duty are required to `respond to all calls for assistance, including the "backing up" of any law enforcement officer.'"
Similarly, the Camden County Association reprises its argument before PERC, pointing to the written policies of the Camden County Prosecutor's Office authorizing assistant prosecutors to carry firearms and arrest criminals as evidence that its assistant prosecutors engage in police services. Those policies, which are part of the written Standard Operating Procedures (SOP) issued by the Camden County Prosecutor, include: (1) SOP 50-1: provides "designated Assistant Prosecutors have special legal authority to use force and deadly force in certain situations subject to limitations"; (2) SOP 50-4: imposes five conditions on an assistant prosecutor's authority to carry a service weapon while on duty; (3) SOP 54-1 to 54-19: sets out detailed guidelines for assistant prosecutors' use of various levels of force, from non-deadly to deadly; (4) SOP 54-12: authorizes physical force to, among other things, "make an arrest"; (5) SOP 57-3: lists the situations where an assistant prosecutor is permitted to make "off-duty" arrests; and (6) SOP 57-4: requires off-duty assistant prosecutors to report any suspected criminal activities to *68 "appropriate law enforcement authorities" and to "take appropriate action," which might include "arrest, telephoning for assistance, noting the physical description of the offender and/or vehicle, aiding the victim and assisting responding local law enforcement units."
The applicable principles are well settled. Our review of an agency decision is limited. Tlumac v. High Bridge Stone, 187 N.J. 567, 573, 902 A.2d 222 (2006). Generally, "we will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." County of Gloucester, supra, 107 N.J.Super. at 156, 257 A.2d 712. It is the latter category with which we are concerned in this appeal. Although an agency's "interpretation of the statute it is charged with administering . . . is entitled to great weight," Bent v. Twp. of Stafford Police Dep't, 381 N.J.Super. 30, 40, 884 A.2d 240 (App.Div.2005), we will not yield to PERC if its interpretation is "plainly unreasonable, contrary to the language of the Act, or subversive of the Legislature's intent." In re N.J. Tpk. Auth. v. Am. Fed'n of State, County & Mun. Employees, 150 N.J. 331, 352, 696 A.2d 585 (1997) (citation omitted). Moreover, we owe no special deference to PERC's interpretation of the law outside its charge. See Teeters v. Div. of Youth & Family Servs., 387 N.J.Super. 423, 428, 904 A.2d 747 (App. Div.2006), certif. denied, 189 N.J. 426, 915 A.2d 1049 (2007).
With these principles in mind, we first address PERC's interpretation of N.J.S.A. 34:13A-15, a statute within its sphere, and N.J.S.A. 2A:158-18, a statute outside its sphere. Because PERC's conclusion was, in part, based upon its interpretation of N.J.S.A. 2A:158-18, it is not entitled to our deference. However, we are satisfied that PERC's analysis is correct.
Although N.J.S.A. 34:13A-15 lists many examples of "employees engaged in performing police services," it does not include prosecutors or assistant prosecutors. However, by its stated terms, the list is not exclusive, thus leaving unanswered the expressed question whether assistant prosecutors were meant to be included. Nonetheless, we are in accord with PERC's assessment that they were not meant to be included. As PERC noted, county prosecutors are granted the statutory power pursuant to N.J.S.A. 2A:158-15 to hire assistant prosecutors, as well as county detectives, N.J.S.A. 2A:157-2, and investigators, N.J.S.A. 2A:157-10. The expressed inclusion of county investigators and detectives in N.J.S.A. 34:13A-15, when considered alongside the accompanying Assembly Labor, Industry and Professions Committee's statement that it was "releasing this bill . . . to delineate the principal job titles within the scope of `public police department'" leads us to the same conclusion arrived at by PERC, namely, that had the Legislature intended to include assistant prosecutors it would have listed them.
N.J.S.A. 2A:158-18 provides:
In any county any of the assistant prosecutors of such county may attend the sessions of the grand jury of such county, and render therein any service or perform any duty that might be rendered or performed by the prosecutor of such county if he were present.
The Associations assert that N.J.S.A 2A:158-18 confers to assistant prosecutors the authority to render or perform the same duties as the county prosecutors. They argue that, from a statutory construction point of view, the placement of a comma after the word "county" in N.J.S.A. *69 2A:158-18 evinces a legislative intent not to qualify the phrase beginning with "perform any duty" with the preceding reference to "sessions of the grand jury of such county." See, e.g., State, Dep't of Envtl. Prot. & Energy v. Santomauro, 261 N.J.Super. 339, 345, 618 A.2d 917 (App. Div.1993). The Associations posit that N.J.S.A. 2A:158-18 read in conjunction with N.J.S.A. 2A:158-5, which requires prosecutors within their counties to "use all reasonable and lawful diligence for . . . detection [and] arrest," leads to the conclusion that assistant prosecutors are imbued with police powers, thus qualifying them for inclusion in the Act. As such, they maintain that PERC erred in determining that assistant prosecutors were not statutorily conferred the power of arrest.
Santomauro involved a statute that prohibited the sale of any dead part "`of any species of squirrel, wild rabbit, wild hare, or wild deer, or of a game bird or song bird belonging to a species or subspecies native to this State.'" Santomauro, supra, 261 N.J.Super. at 344, 618 A.2d 917 (quoting N.J.S.A. 23:4-27). The panel determined that the modifying phrase beginning with "belonging to" referred only to game and song birds. Id. at 345, 618 A.2d 917. In contrast, N.J.S.A. 2A:158-18, as written, does not list a series of items followed by a modifying phase.
By inserting the comma, the drafters of N.J.S.A. 2A:158-18 rendered the meaning of the statute less clear than had the comma not been used. However, when the statute is read as a whole, its meaning is limited to vesting assistant prosecutors with the authority to act as the county prosecutor at grand jury sessions. In our view, the word "therein" refers to grand jury sessions, not the county, as argued by the Associations. The sentence speaks in terms of assistant prosecutors acting as a prosecutor as "if he were present." The word "present" logically refers to being present at a grand jury session, as attendance at such a session is the topic of the sentence. We are satisfied that if the Legislature wanted assistant prosecutors to be empowered to perform all the duties of a prosecutor, it presumably would have chosen a more direct way of expressing it.
Our analysis is also consistent with a review of the semantic history of the statute. As originally adopted in 1908, the predecessor to N.J.S.A. 2A:158-18 did not include the comma: "It shall be lawful for the first assistant prosecutor to attend the sessions of the Grand Jury and render therein any service or perform any duty that might be rendered or performed by the prosecutor if he were present." L. 1908, c. 90, § 3. The comma was added to the next revision in 1911, when a second assistant prosecutor was added to the first. L. 1911, c. 58, § 1. In 1917, the comma disappeared, as did the inclusion of the second assistant. L. 1917, c. 19, § 2. The following year, the comma was resurrected as part of an amendment stating that, in addition to the first assistant, up to three other assistants could attend sessions of the grand jury. L. 1918, c. 12, § 3. The comma was retained in the 1944 amendment, which reworded the section to read substantially the same as it does today.[3]L. 1944, c. 32, § 1.
The foregoing history suggests that the comma was added and omitted at the whim of the drafter at the time. Its omission from the original version in 1908 is persuasive evidence that the provision was intended to apply only to grand jury sessions. If a major departure from the original meaning was intended, it is logical that *70 clearer language would have been used, perhaps, for example, a new and separate provision.
We are likewise convinced, as observed by PERC and the Prosecutors, that the Legislature's failure to grant police arrest powers to assistant prosecutors while expressly granting such powers to county detectives, N.J.S.A. 2A:157-2, county investigators, N.J.S.A. 2A:157-10, and court attendants, sheriffs' officers and corrections officers, N.J.S.A. 2A:154-3, supports the conclusion that the Legislature did not intend to confer the same statutory police arrest power to assistant prosecutors.[4] Indeed, "the duties of assistant prosecutors are not statutorily defined." In re Assistant Union County Prosecutors, supra, 301 N.J.Super. at 562, 694 A.2d 289. As public employees serving at the pleasure of the prosecutor under N.J.S.A. 2A:158-15, some assistant prosecutors may engage in diverse roles, which include engaging in investigations from time to time. Nevertheless, it remains a fact that
[t]hey are lawyers first and foremost. Assistant prosecutors are trained as lawyers, not as police officers. When they deal with other law enforcement agencies, their essential responsibility is to provide legal advice. While assistant prosecutors commonly assist in the training of police officers, their basic function is to educate them on the requirements of the law. As lawyers, assistant prosecutors must comply with a code of professional ethics that does not govern police officers.
[In re Assistant Union County Prosecutors, supra, 301 N.J.Super. at 562, 694 A.2d 289.]
The primary duty of assistant prosecutors is to perform legal services in connection with law enforcement. Those who are present when arrests are made act in an advisory capacity as lawyers to help to insure that procedural due process under the law is carried out. Stated simply, they are not police officers. Their limited performance of police-type activities as envisioned in the rules and regulations governing the County Prosecutors' Offices does not infuse them with police status entitling them to compulsory interest arbitration under the Act. They do not fit the mold envisioned by the legislative purpose expressed in N.J.S.A. 34:13A-14a, which is to reward those who "regularly confront" physical harm on a "daily" basis. Even if we were to believe that a reading of N.J.S.A. 2A:158-15 and -18 conferred general statutory authority to assistant prosecutors to arrest, which we do not, the Act's inclusion of county detectives and investigators as a principle job title within the scope of public police department, without *71 a similar delineation of assistant prosecutors, in our view, supports the conclusion that the Legislature did not intend to include assistant prosecutors as a group entitled to compulsory interest arbitration.
Our analysis of the Act and its inapplicability to assistant prosecutors renders moot the Union County Association's claim that PERC's reliance on its decision in the Camden County Association case amounted to a failure to examine and perform an appropriate investigation of the Union County Association's members' specific duties and responsibilities. Nonetheless, the record established that the Union County Association provided a detailed factual response to the Prosecutor's motion to dismiss, laying out the applicable provisions of its Policy Manual and its factual and legal contentions. Indeed, in its decision, PERC specifically discussed the "[o]ne additional fact raised by the [Union County] Association," its members' identification cards.[5] Moreover, the record does not indicate that the Union County Association requested a full evidential hearing or oral argument.
Affirmed.
NOTES
[1] The Camden Association also represents law clerks as their bargaining representative.
[2] Camden County Assistant Prosecutors' Association's petition was filed on March 27, 2006, and Union County Assistant Prosecutors' Association's petition was filed on May 30, 2006.
[3] The only change since 1944 has been the deletion of the phrase "of the pleas" as a modifier of "prosecutor" and "assistant prosecutors."
[4] N.J.S.A. 2A:157-2 provides:

The [county] prosecutor . . . may appoint . . . county detectives, to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law. Persons so appointed shall . . . possess all the powers and rights and be subject to all the obligations of police officers, constables and special deputy sheriffs in criminal matters.
N.J.S.A. 2A:157-10 provides:
The [county] prosecutor . . . may appoint . . . county investigators . . . to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law. Persons so appointed shall possess all the powers and rights and be subject to all the obligations of police officers, constables and special deputy sheriffs, in criminal matters.
N.J.S.A. 2A:154-3a provides:
All court attendants, sheriff's officers and county correction officers . . . who have been . . . appointed by the sheriff or board of chosen freeholders . . . by virtue of such appointment and in addition to any other power or authority, be empowered to act as officers for the detection, apprehension, arrest and conviction of offenders against the law.
[5] In its written opinion in In re Union County Prosecutors, PERC acknowledged that the Union County Association raised an additional fact that its assistant prosecutors carry photo identification cards that indicate that the prosecutors are "POLICE" with "full police powers." It found that, although the possession of these identification cards "suggests that under certain circumstances, assistant prosecutors may exercise certain police powers," that fact did not change its analysis concerning the occasional participation in traditional police tasks versus the non-police activities performed by the unit as a whole.