NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5285-18T2

CHRIS DOE[1],

     Plaintiff-Appellant,

v.

RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,
and CASEY WOODS in his Official
Capacity as the OPRA Administrator
and Records Custodian of RUTGERS
UNIVERSITY,

     Defendants-Respondents.

_____

> APPROVED FOR PUBLICATION
>
> **January 12, 2021**
>
> APPELLATE DIVISION

Argued October 28, 2020 – Decided   January 12, 2021

Before Judges Alvarez[2], Sumners and Geiger.

---

[1] Chris Doe is a fictitious name used to protect the plaintiff/student's right to confidentiality of the plaintiff/student's records under state and federal law which are the subject of civil action. Federal Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C.S. §1232g, New Jersey Pupil Records Act, N.J.S.A. 18A:36-19, L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56, 86 (App. Div. 2017) ("to safeguard the reasonable privacy interests of parents and students against the opposing interests of third parties who may seek access to their student records")

[2] Judge Alvarez did not participate in oral argument but has, with the consent of counsel, been added to the panel deciding this matter.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1651-18.

Jamie Epstein argued the cause for appellant.

Michael O'B. Boldt argued the cause for respondents (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Michael O'B. Boldt, of counsel and on the brief).

The opinion of the court was delivered by

SUMNERS, JR., J.A.D.

Defendant Rutgers University, through its records custodian defendant Casey Woods, denied plaintiff Chris Doe's requests under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for various records, including his own Rutgers graduate student records, and for attorney's fees and costs (collectively "attorney's fees"). Following an order to show cause hearing to determine whether defendants' denial violated OPRA, the trial court agreed with defendants' action and issued an order dismissing the requests as overbroad.

We reverse the court's order that plaintiff is not entitled to his own student records subject to redaction of personally identifiable information (PII) and remand to the court to determine if plaintiff is entitled to attorney's fees related to the release of those records. We also reverse and remand the court's order that plaintiff is not allowed attorney's fees related to defendants'

voluntary release of information pertaining to copies of specific university professors' and administrators' disclosable employment records. The remand is to allow the court the opportunity to issue findings of facts and conclusions of law regarding plaintiff's entitlement to attorney's fees. The court shall also determine if plaintiff is entitled to attorney's fees related to the student records that we conclude he is entitled to receive. We affirm all other aspects of the court's order.

I

Plaintiff, a former student at the State University's Graduate School of Business, Newark campus, submitted OPRA requests to Woods, Interim OPRA Administrator and Records Custodian. On March 13, 2018, he sought the following:

> [Request One]. Any and all documents, whether in electronic or paper media, which make reference to [Chris Doe or Chris Doe's initials] between 1/1/2017 to present. Documents requested include, but are not limited to: (a) financial records (requested immediately pursuant to [N.J.S.A.] 47:1A-5) such as bills, invoices, receipts, ledger accounts, payments, both sides of canceled checks, etc.; (b) academic records such as records kept by staff who provided [Chris Doe] educational services, transcripts, notes, letters, emails, reports, tests, etc.; (c) administrative records such as health records, discipline records, etc.; (d) communications records such as emails, memos, text messages, voice mail, letters, etc., sent or received by staff, administrators, contractors or agents of the University. Email search: where the sender or

3

recipients is a staff, administrator, contractor or agent of the University and the body or subject of the email refers to [Chris Doe or Chris Doe's legal name initials or Chris Doe's student number].

[Request Two]. Regarding each employee listed below, the following information is requested: title, position, salary, payroll record, length of service, data contained in the information which disclose conformity with specific experiential, educational or medical qualifications required for employment, date of separation (if any) and the reason and the employee's employment contract (which is requested immediately pursuant to [N.J.S.A.] 47:1A-5)[:] (a) Dr. Edward Bonder, Associate Professor, Faculty of Arts and Sciences – Department of Biological Sciences; (b) Dr. Wayne Eastman, Professor[,] Rutgers Business School – Supply Chain Management; (c) Dr. Francis Bartkowski, Professor[,] Faculty [of] Arts and Sciences – Department of English; (d) Dr. Kinna Perry, Associate Dean of Graduate School-Newark; (e) Dr. Kyle Farmbry, Dean of the Graduate School-Newark.

[Request Three]. Any and all documents or emails which refer to Record Request Information Item[s] [One] and [Two] above either in the body of the email or document or in its attachment.

[Request Four]. Any and all records created including metadata in responding to this OPRA request.

Defendants replied that same day that Request Two records would be provided "as soon as is practicable," but the other requests were denied because they were "overly broad" and did not adequately "describe the

documents sought." To obtain his academic transcript that was sought in Request One, plaintiff was directed to a university website.

Three days later, plaintiff submitted another OPRA request (Request Five) seeking documents in electronic or paper media of "[t]he disciplinary case file of any and all Rutgers Newark Graduate [s]tudent charged with a separable offense from 1/1/2013 to present" but "with all [PII] redacted." Defendants denied that request on March 28 as "overly broad" and requiring research by the custodian.

Within a few days of the original request, and before receiving the Request Two records that defendants advised would be provided, plaintiff filed an order to show cause and verified complaint in the Law Division to obtain all the sought-after records. After the court entered an order to show cause, plaintiff filed a second amended verified complaint. Defendants provided the records responsive to Request Two shortly thereafter: forty-five days after the request was initially made. The court subsequently issued an order and written opinion denying plaintiff's OPRA requests for unprovided records and attorney's fees.

II

We first point out, with the exception of attorney's fees, we reject plaintiff's contention that a remand is necessary because the trial court failed to

comply with Rule 1:7-4(a), which requires the court to set forth its factual findings and conclusions of law dismissing his OPRA requests.  Relying upon MAG Ent., LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 549 (App. Div. 2005), the court found that plaintiff made "'[w]holesale requests' for generalized information to be analyzed and compiled by the responding agency [that were] outside of OPRA's scope."  Plaintiff did not comply with defendants' request by narrowing the emails sought by "content and/or subject," "specific date or range of [transmission] dates," and "identify[ing] the sender and[/]or recipient thereof."  Finding the demand was inconsistent with OPRA's legislative intent, the court explained plaintiff's requests were not "well defined," thereby requiring Woods to make an impermissibly subjective analysis to determine what records were sought.  Paff v. Galloway Twp. (Paff II), 229 N.J. 340, 355 (2017).

III

"OPRA provides for ready access to government records by the citizens of this State."  Burnett v. Cnty. of Bergen, 198 N.J. 408, 421-22 (2009) (citing Mason v. City of Hoboken, 196 N.J. 51, 64-65 (2008)).  Government records are defined as

> any paper, written or printed book, document,
> drawing, map, plan, photograph, microfilm, data
> processed or image processed document, information
> stored or maintained electronically or by sound-

6

recording or in a similar device, or any copy thereof, <u>that has been made, maintained or kept on file</u> in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that <u>has been received</u> in the course of his or its official business by any such officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof. The terms shall not include inter-agency or intra-agency advisory, consultative, or deliberative material.

[N.J.S.A. 47:1A-1.1 (emphasis added).]

Our "overarching public policy" favors "a citizen's right of access." <u>Courier News v. Hunterdon Cnty. Prosecutor's Off.</u>, 358 N.J. Super. 373, 383 (App. Div. 2003) (citing N.J.S.A. 47:1A-1). Accordingly, OPRA directs that "all government records shall be subject to public access unless exempt[,]" and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. OPRA only applies to records "made, maintained or kept on file in the course of [a public agency's] official business[,]" as well as any document "received in the course of [the agency's] official business[.]" N.J.S.A. 47:1A-1.1.

Among the records specifically exempted under OPRA are those kept by "any public institution of higher education, . . . deemed to be privileged and confidential[,]" such as "information concerning student records or grievance or disciplinary proceedings against a student <u>to the extent disclosure would</u>

reveal the identity of the student." Ibid. (emphasis added). Also exempt are "any federal law, federal regulation, or federal order[,]" N.J.S.A. 47:1A-1, and any information that is protected by any "federal law[,] federal regulation[,] or federal order[,]" N.J.S.A. 47:1A-9(a). We review de novo the trial court's legal conclusions regarding plaintiff's OPRA requests. Paff v. Galloway Twp. (Paff I), 444 N.J. Super. 495, 501 (App. Div. 2016) (citation omitted).

Both parties rely on our decision in L.R. v. Camden City Pub. Sch. Dist., (L.R. I), 452 N.J. Super. 56, 95 (App. Div. 2017), affirmed by an equally divided Supreme Court, L.R. v. Camden City Pub. Sch. Dist. (L.R. II), 238 N.J. 547, 550 (2019) (Patterson, J., concurring), where we ruled that a request under OPRA, the New Jersey Pupil Records Act, N.J.S.A. 18A:36-19, and the Federal Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, for unredacted "[student] records"[3] that do not "incidentally mention or identify other students[,]" are accessible to the student or the student's parent, guardian, or authorized legal representative. Plaintiff argues he is entitled to his own student records that were deemed disclosable under OPRA in the L.R. decisions. Plaintiff also cites published responses by the

---

[3] N.J.A.C. 6A:32-2.1 defines a student record as "information related to an individual student gathered within or outside the school district and maintained within the school district, regardless of the physical form in which it is maintained."

Department of Education to comments made to the agency's proposed regulations, Family Educational Rights and Privacy, 73 Fed. Reg. 15,574, 15,583 (Mar. 24, 2008); 73 Fed. Reg. 74,806, 74,831 (Dec. 9, 2008), that support, respectively, the proposition that disclosure is not barred under FERPA once "all identifiers have been removed[.]" 73 Fed. Reg. at 15,583.

Defendants contend that L.R. I, albeit in dicta, specifically stated its ruling does not apply to higher education institutions:

> As a starting point to our de novo legal analysis, we note it is clear and essentially undisputed that the school records sought here are within the scope of OPRA's broad definition of "government record[s.]" N.J.S.A. 47:1A-1.1. They are not "higher education" records exempted from OPRA under N.J.S.A. 47:1A-1.1.
>
> [452 N.J. Super. at 82-83 (alteration in original).]

In response, plaintiff maintains that L.R. I recognized that disclosure of higher education student records after redaction of PII was permitted under N.J.S.A. 47:1A-1.1. Id. at 79. Although the parties argued the impact of the L.R. decisions before the trial court, the court did not address their arguments.

Considering OPRA's commitment to allowing access to public records, we conclude that OPRA requires the disclosure of higher education records if they do not contain PII. "Generally, the public's interest in nondisclosure is based on the need to keep the information confidential." L.R. I, 452 N.J.

Super. at 89 (quoting Keddie v. Rutgers, 148 N.J. 36, 51 (1997)). N.J.S.A. 47:1A-1.1 only exempts public higher education records from disclosure that reveal a student's identity. Plaintiff should be given copies of the requested Rutgers's records that do not reveal the identity of other students. This includes plaintiff's access to his own academic, discipline, and financial records as long as identifiable references to other students are removed. In reaching this conclusion, we are fully cognizant of defendants' need to maintain and implement system-wide protocols under FERPA to safeguard confidentiality of its students' records. Gundlach v. Reinstein, 924 F. Supp. 684, 692 (E.D. Pa. 1996) (citation omitted) ("FERPA was adopted to address systematic, not individual, violations of students' privacy and confidentiality rights through unauthorized releases of sensitive educational records."), aff'd, 114 F.3d 1172 (3d Cir. 1997). That said, allowing plaintiff access to his own university records with appropriate redactions does not breach OPRA's goal to protect confidential information.

Defendants contend plaintiff requested confidential "education records" that are subject to and protected by FERPA. Defendants argue that requiring a public university to disclose a student's own records to the student under OPRA would "substantially and needlessly impede [their] compliance with

FERPA's requirements" and increase the chances that student privacy would be violated. We disagree.

There is nothing in FERPA or its regulations that precludes higher education students from obtaining their own student records through OPRA. "FERPA is a funding statute with corresponding regulations establishing procedures for administrative enforcement and administrative remedies for improper disclosure of student records." State v. J.S.G., 456 N.J. Super. 87, 100 (App. Div. 2018) (citations omitted). It "prohibit[s] the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons." Gonzaga v. Doe, 536 U.S. 273, 276 (2002). "FERPA does not itself establish procedures for disclosure of school records." K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 363 (App. Div. 2011). It defines education records as "records, files, documents, and other materials" containing information directly related to a student, which "are maintained by an educational agency or institution or by a person acting for such agency or institution." Owasso Indep. Sch. Dist. No. I-011 v. Falvo, 534 U.S. 426, 429 (2002) (quoting 20 U.S.C. § 1232g(a)(4)(A)). FERPA regulations provide that third parties without parental consent are allowed access to education records where PII is removed. 34 C.F.R. § 99.31(b)(1).

Defendants fail to cite any provision of FERPA or its regulations that precludes plaintiff's access to the requested records under OPRA.

IV

Concluding that FERPA does not preclude plaintiff's OPRA requests does not end our inquiry. We must consider whether the trial court properly denied his requests based upon OPRA's limitations.

If a public agency denies a requestor access, OPRA places the burden on the agency to prove "the denial . . . [was] authorized by law." N.J.S.A. 47:1A-6. An agency "seeking to restrict the public's right of access to government records must produce specific reliable evidence sufficient to meet a statutorily recognized basis for confidentiality." Courier News, 358 N.J. Super. at 382-83. Absent the necessary proofs, "a citizen's right of access is unfettered." Id. at 383. In assessing the sufficiency of the agency's proofs submitted in support of its claim for nondisclosure, "a court must be guided by the overarching public policy in favor of a citizen's right of access." Ibid. (citing N.J.S.A. 47:1A-1). If it is determined access has been improperly denied, the access sought shall be granted, and a prevailing party shall be entitled to a reasonable attorney's fee. N.J.S.A. 47:1A-6.

OPRA "only allows requests for records, not requests for information." Burke v. Brandes, 429 N.J. Super. 169, 174 (App. Div. 2012) (quoting Bent v Twp. of Stafford Police Dep't., 381 N.J. Super. 30, 37 (App. Div. 2005)). The custodian is obliged to "locate and redact [the requested] documents, isolate exempt documents, . . . identify requests that require 'extraordinary expenditure of time and effort' and warrant assessment of a 'service charge,' and, when unable to comply with a request, 'indicate the specific basis'" thereof. Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth., 416 N.J. Super. 565, 576 (App. Div. 2010) (quoting N.J. Builders Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super. 166, 177 (App. Div. 2007) (quoting N.J.S.A. 47:1A-5(a)- (j))). If "the custodian is unable to comply with a request for access, the custodian shall indicate the specific basis therefor on the request form and promptly return it to the requestor." N.J.S.A. 47:1A-5(g).

While an exact definition of an impermissibly overly broad request is abstract, courts have found requests that require a custodian to exercise his discretion, survey employees, or undertake research to determine whether a record is responsive are overly broad and not encompassed by OPRA. We have concluded plaintiff's requests for "any and all documents and data . . . relied upon, considered, reviewed, or otherwise utilized" were impermissibly overbroad because they require the custodian to exercise discretion to

determine whether to comply. N.J. Builders Ass'n, 390 N.J. Super. at 172. Thus, an OPRA applicant "must identify with reasonable clarity those documents that are desired, and a party cannot satisfy this requirement by simply requesting all of an agency's documents. OPRA does not authorize unbridled searches of an agency's property." Bent, 381 N.J. Super. at 37; see also Renna v. Cnty. of Union, 407 N.J. Super. 230, 245 (App. Div. 2009) ("The custodian must have before it sufficient information to make the threshold determination as to the nature of the request and whether it falls within the scope of OPRA.").

As to Request One, we conclude some of the records sought are disclosable and some are not. Woods's certification in response to the order to show cause provides that "searching all of the mail accounts on the University's email systems is practically impossible and also very disruptive to certain other operations within the University's Office of Information Technology, which is impossible for gathering electronic documents from the University's e-mail servers[.]" He suggests "narrowing the search to specific senders/recipients as well as a date range could greatly improve the chances [of] having a successful search[.]" This limitation should not impede defendants' ability to respond to plaintiff's request in subcategory (a) for financial records. Rutgers, like any organization that maintains financial

A-5285-18T2

records for its clients, in this case students, should be able to generate its financial history with plaintiff. Defendants have not proffered any reason that suggests an impediment to locating those records.

With the exception of plaintiff's academic transcripts and discipline records, we agree with the trial court that subcategories (b), (c), and (d) are overbroad as they require Woods to exercise his discretion, survey staff, or undertake research to determine if he was responsive to the request. Educational service records sought in subcategory (b) are undefined. The subcategory's request for "records kept by staff" such as "notes, letters, emails, reports, tests, etc.[,]" requires Woods to identify and search the universe of locations where these records might be maintained and thus constitutes an unbridled records search. In the initial reply to plaintiff's request, Woods noted "[d]ue to the University's size and the sheer number of employees, we cannot perform open-ended searches on our servers using only a keyword, our [Office of Information Technology] staff require[s] individual sender/receiver identities to perform an email search."

Subcategory (c)'s request for "health records" is not subject to OPRA because the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §§1320d-1 to -9, and its related regulations govern a patient's right to inspect and obtain copies of the patient's medical records to

15

protect unauthorized disclosure. See Smith v. Datla, 451 N.J. Super. 82, 102 (App. Div. 2017); Bernetich, Hatzell & Pascu, LLC v. Med. Records Online, Inc., 445 N.J. Super. 173, 180 (App. Div. 2016). Plaintiff's claim that defendants did not rely upon HIPAA as a reason for denying his request is of no import because the release of health care is of significant public interest for us to consider. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014). In addition, the requests would require research to determine where plaintiff received health care through or at the university. Subcategory (d)'s request for "communications records" is overbroad as it is not the type of routine search required by OPRA. The request would be disruptive to defendants' operations because it would require an unreasonable labor expense given the university's numerous departmental servers, faculty and staff desktop computers, email accounts, and individual voicemail accounts. In fact, defendants sought to resolve the request by telling plaintiff he would need to identify senders and/or recipients instead, but he chose not to respond.

With respect to Request Three, seeking documents or emails regarding Requests One and Two, and Request Four, seeking metadata responding to all requests, they both seek records that did not yet exist at the time of the request. Hence, they are not yet government records. OPRA's plain language defines a record as a document, information, or data "that has been made, maintained or

kept on file . . . or that has been received." N.J.S.A. 47:1A-1.1. See McGovern v. Rutgers, 211 N.J. 94, 108 (2012) (looking first to the plain language of the statute to determine the Legislature's intent). Both requests are also not subject to disclosure under OPRA because they are open-ended demands tantamount to an "any and all" request disfavored by caselaw. To comply, defendants would have to search through all of Rutgers's files and analyze the information contained therein to identify for plaintiff the records sought. Moreover, the requests are not permissible under OPRA because they seek "inter-agency or intra-agency advisory, consultative[,] or deliberative material" that is part of the decision-making process as to implementation of policy. Ciesla v. N.J. Dep't of Health & Senior Servs., 429 N.J. Super. 127, 137 (App. Div. 2012) (citing N.J.S.A. 47:1A-1.1; Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 284 (2009); In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 83 (2000)).

Lastly, we turn to Request Five seeking disciplinary files – with PII redacted – of all Rutgers Newark graduate students charged with a separable offense from January 1, 2013 to the present. Despite plaintiff's efforts to comply with OPRA's requirement that student records not disclose the student's identity, N.J.S.A. 47:1A-1.1(21)(f), the trial court was correct in

17

ruling the records were not subject to disclosure because the request was overbroad. Plaintiff fails to provide any reference to disciplinary guidelines indicating what charge might result in a student being separated or expelled from a graduate program. Leaving it to defendants to research and compile a database to determine what discipline records were exempted or could be redacted makes the request overbroad.[4]

V

In sum, we conclude OPRA only allows plaintiff to obtain copies of his own academic transcripts, discipline records, and financial records subject to redaction to preclude the identity of other students. We remand for the trial

_____

[4] In L.R. I, we held

> that school districts must afford parents and guardians a reasonable opportunity to comment upon the proposed redactions of records relating to their own child. . . . [This allows them to] show how his or her child might be readily identified within the community, despite good faith efforts by school employees to perform effective and thorough redactions of the child's records.
>
> [452 N.J. Super. at 92.]

Thus, we question whether a more circumscribed OPRA request would require that graduate students be afforded the opportunity to review and object to a proposed redaction of their disciplinary files to prevent disclosure of their identity. Because this issue was not before us, we do not address it.

court to determine whether plaintiff is entitled to any attorney's fees related to his efforts to obtain these records. Each party should be afforded the opportunity to present their respective positions to the court. We leave it to the court's discretion to allow oral argument. We also remand for the court to issue findings of facts and conclusions of law regarding plaintiff's entitlement to attorney's fees related to defendants' voluntary release of information pertaining to specific university professors' and administrators' disclosable records. We take no position as to whether plaintiff is entitled to any attorney's fees that the court shall consider on remand.

Affirmed in part and reversed and remanded in part consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5285-18T2